The STATE of Texas et al., Appellants,

v.

SOUTH MAIN BAPTIST CHURCH et al., Appellees.

No. 13885.

Court of Civil Appeals of Texas.

Houston.

Oct. 11, 1962.

Rehearing Denied Nov. 15, 1962.

Joe Resweber, County Atty., Charles F. Mitchell, Edward J. Landry, Asst. County Attys., Houston, for appellants.

Vinson, Elkins, Weems & Searls, M. C. Chiles, F. Russell Kendall, Jarrel D. McDaniel, Houston, for appellees.

WERLEIN, Justice.

This suit was brought by the State of Texas and Harris County, appellants, against South Main Baptist Church and its trustees, and other parties not involved in this appeal, to condemn for highway purposes three tracts of land belonging to the Church in Houston, Texas. The first tract sought to be condemned consists of 38 square feet in Block 13; the second tract, 9374 square feet in Block 12; and the third tract, 20,409 square feet in Block 7, all in the James Bute Addition in the City of Houston, Harris County, Texas. To the award of $82,045.00 by the special commissioners appointed by the court, appellees filed their objections in the trial court, and upon a trial by jury were awarded a judgment in the sum of $211,348.00, from which judgment appellants have duly perfected their appeal.

The three tracts of land actually taken herein will be referred to as Tract 1, Tract 2 and Tract 3. The jury allowed for Tract 1 $114.00 and $7500.00 damages to the remainder of the Church property in Block 13; for Tract 2, which was entirely taken, $35,152.50; for Tract 3, $80,183.75 and $31,593.00 damages to the remainder of the Church property in Block 7; and damages in the sum of $56,804.75 for decrease in the intrinsic value of Tract 4 due to the taking of Tracts 1, 2 and 3.

Tract 4, upon which is situated the Church sanctuary and an educational building, like Tracts 1, 2 and 3, is a separate and isolated tract of land non-contiguous to any one of the other tracts.

We here insert a map of a portion of the James Bute Addition, being Appendix I to appellants' brief, showing the tracts in question.

EXHIBIT

KEY: Tracts 1, 2 and 3 are indicated on the map. The remainder is shown by horizontal lines.

Map a portion of the James Bute Addition, Houston, Harris County, Texas

Scale 1" equals 200'

Appellants contend that the finding by the jury of $7500.00 damages to the remainder of the tract from which Tract 1 was severed, is so against the great weight and preponderance of the evidence as to be manifestly unjust. Tract 1 contains only 38

square feet near the rear of the tract of land upon which is situated appellees' recreation building. Appellees in seeking damages to the remainder of the tract of land from which Tract 1 was severed, rely principally upon the fact that the Southwest Freeway, for which purpose the condemnation in question was undertaken, now passes near the rear of said recreation building and exposes its rear to public view. They claim that as a result thereof they have been damaged to the extent of what it will cost to make the rear of the building look like the front of the building. The east and south walls of the recreation building, and a little turn-around near the rear, are constructed of a buff-faced brick, whereas the rear of said recreation building, which is now more exposed to view because of the Freeway, is constructed of what is commonly known as pink or reddish common brick. Between the Freeway and the building is a service road and ample room for a sidewalk, as shown on Plaintiffs' Exhibit 19. The Richmond Avenue exit from the Freeway permits leaving the Freeway just south of Richmond Avenue and continuing on such exit road in a northerly direction across Richmond, thus permitting direct access to the recreation building on Colquitt Avenue.

■ We think that the evidence wholly fails to show that the use or utility of the recreation building has been injuriously affected by taking as a part of the service road or sidewalk the small tract of 38 square feet. The rear walls of such building are substantial brick walls and no change whatever has been made therein by the construction of the Freeway, or the taking of the 38 square feet. The inserted map shows that the rear of such building was exposed to view by people on Bute and Colquitt Streets and perhaps on West Main Street prior to the taking, except as their vision was obscured by buildings on such streets. Witness Lee testified that he thought there was some damage to the recreation building and that such damage would be the amount that it would take to make the rear

of the building look like the front of the building. This was substantially tthe testimony of Witness Clawson also.

■ ■ It is our view that since no change whatever was made in the building itself by appellants, they are not responsible for the fact that the public may have a little better view of the rear of the recreation building now than they had prior to the taking and the construction of the Freeway. Witness Allen, who qualified as an expert realtor and appraiser, testified as to the value of the 38 square foot triangle that was taken, and also testified that such taking just barely nipped off the corner of the tract on which the recreation building is located, and that he did not include the improvements because the improvements were not affected at all. Lloyd Fadrique, another qualified realtor and appraiser, also testified as to the value of Tract 1 taken, and testified that he felt that the remainder was not damaged by the taking of the small portion of land which was not being used and which was taken off of the rear of the site upon which the educational building was constructed and which would not damage its use or utility. Mr. Finley, a real estate agent and appraiser, testified that the value of the remainder from which Tract 1 was severed, was the same before and after the taking. Dust, noise and traffic hazards, if any, incident to the use of the Freeway cannot be considered as they are common to all the buildings and homes located near the Freeway. The cost of beautifying the recreation building when it is structurally sound and nothing has been done to change or mar its appearance in any way whatever, does not constitute a proper element of damages. Furthermore, the testimony of Witnesses Lee and Clawson with respect to such alleged damage as the result of the taking of Tract 1, consists merely of conclusions. As stated in Tennessee Gas and Transmission Co. v. Zirjacks, Tex.Civ.App., 244 S.W.2d 837, error dism., in the opinion of Justice Norvell: "One claiming damages to land must show the nature of the damage, the effect upon various portions of the

tract and the relationship of the same to market value. A mere conclusion as to market value is insufficient for this purpose."

Basing our holding on the entire record, it is our view that the finding of damages by the jury of $7500.00 to the remainder of the tract of land from which Tract 1 was taken is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

We have read the statement of facts and have concluded that the jury's findings that Tract 1 had a value of $114.00, that Tract 2, all of which was taken, had a reasonable market value of $35,152.50, that Tract 3, which was taken, had a reasonable market value of $80,183.75, and that the remainder of the tract from which Tract 3 was taken was damaged to the extent of $31,593.00, find support in the evidence. The jury also allowed, however, $56,804.75 for the loss of the intrinsic value of Tract 4. No part of Tract 4 was taken for Freeway purposes, nor is the Freeway contiguous thereto. West Main Street separates Tract 4 from Block 7, from which Tract 3 was taken, and Brandt Street separates Tract 4 from the tract of land in Block 13 from which Tract 1 was taken, although the evidence shows that there is a tunnel connecting Tract 4 with the recreational building situated on Block 13.

■ Appellants in their second point assert that the court erred in submitting Special Issue No. 8 inquiring as to whether Tract 4 had a market value since appellees in their pleadings and testimony judicially admitted that such tract did have a market value. Appellees on the other hand contend that this point should not be considered by the court because not raised in appellants' motion for new trial. We agree that the point is not sufficiently raised in appellants' motion for new trial. It is our view, however, based upon the entire record that appellees did not judicially admit in their pleadings or testimony that Tract 4 had a

market value. We think there was ample evidence to support the jury findings that Tract 4 did not have a market value but did have an intrinsic value on May 18, 1959, the date of taking. It was not error, therefore, for the court to submit Special Issues Nos. 10 and 11 relating to the intrinsic value of Tract 4 before and after the taking of Tracts 1, 2 and 3, nor was it error for the trial court to overrule appellants' motion to disregard such findings. We cannot say that such findings are so against the great weight and preponderance of the evidence as to be manifestly unjust.

In their fifth point appellants complain that the trial court erred in submitting issues relating to compensation for the decrease in market value of the individual remainders of the tracts of land from which Tracts 1 and 3 were severed, since under the unity of use theory of appellees, the issue of compensation for the decrease in value resulting from the taking of Tracts 1, 2 and 3 should specify and embrace the decrease in value of the whole of appellees' property, and not merely the individual tracts of land from which Tracts 1 and 3 were severed.

■ We agree with appellees that appellants' Point V cannot be considered because it was not raised in appellants' motion for new trial, and for the further reason that appellants in their objections and exceptions to the court's charge, did not object or except to the submission of the issues relating to damages to the remaining tracts of land from which Tracts 1 and 3 were severed on the ground that the decrease in value of appellees' property as a whole should have been submitted under the unity of use theory. It is true that in their motion for new triral and in their objections and exceptions to the submission of Special Issue No. 11 in the court's charge, appellants pointed out in a general way that the submission of such issue relating to the decrease in value of Tract 4 would result in giving appellees double damages, but, as stated, there is no objection or exception or allegation in the motion for new trial to the effect that the submission of the first

seven issues would result in double damages or that the case should have been submitted on the unity of use theory. Moreover, at the commencement of the trial appellants consented to the submission of the special issues relating to damages to the remainders of the separate tracts of land from which Tracts 1 and 3 were severed.

We think the undisputed evidence shows that the tracts of land belonging to appellees constituting the Church property, were being devoted to a unity of use that united them into an entity of use, so that they should have been considered as such entity for purposes of estimation of damages to the remaining lands of the Church as a whole upon the taking of Tracts 1, 2 and 3. Rayburn, Texas Law of Condemnation (1st ed.), Ch. V-E, Sec. 160(1), pp. 455–459. In McLennan County v. Stanford, Tex.Civ.App., 350 S.W.2d 208, the court stated:

"Where separate, but contiguous tracts are integral parts of an entity under common ownership in such physical and functional relationship that they are joined by unity of use by the same proprietor into a single property, they will be treated as a whole in assessing damages to the remainder in the taking of a part." (Citing authorities.)

The unity of use rule may also be applied where an owner's land devoted to a single use or purpose is divided by long established public streets or highways. See 6 A.L.R. 2d 1212–1227; Trustees of Boston University v. Commonwealth (1934), 286 Mass. 57, 190 N.E. 29; Texas Electric Service Company v. Linebery, Tex.Civ.App., 327 S.W. 2d 657, 662, writ dism.; 22 Tex.Jur.2d, p. 246, § 152, Eminent Domain.

Under the circumstances of this case, however, it was not error to submit the first seven issues on the theory that Tract 2 and the tracts from which Tracts 1 and 3 were severed, were separate, isolated tracts. The error was in the submission of issues with respect to damages to Tract 4 on a unity of use basis after appellees with consent of appellants had elected to treat the other tracts as isolated tracts of land. If the case had been submitted under the unity of use rule, then damage to Tract 4 and the other tracts as a whole remaining after Tracts 1, 2 and 3 were taken, might have been considered by the jury. We find no authority, however, which would permit a combination of the non-unity of use rule and the unity of use rule under the facts of this case. The error, however, cannot be said to be fundamental error.

Appellants failed to level objections and exceptions to the submission of damages to Tract 4 under the unity of use rule after the court had impliedly found that the non-unity of use rule was applicable in the submission of the first seven issues, and also failed to raise such point in their motion for new trial. They do not have any point in their briefs covering such error, although in the statements and arguments in their briefs they now complain for the first time that it was error to submit the first seven issues on the non-unity of use theory and then submit the issue of damages to Tract 4 on the unity of use theory. Hence appellants by their failure to object or except to the court's charge or to submit special issues now claimed by them to be the proper issues, have waived their right to complain of the manner in which such issues were submitted. Rules 274 and 279, Texas Rules of Civil Procedure; Frozen Foods Express v. Odom, Tex.Civ.App., 229 S.W.2d 92, writ ref., n. r. e., and cases cited; Lloyd's Casualty Insurer v. Castle, Tex.Civ.App., 268 S.W.2d 498, writ ref., n. r. e.; Southwestern Settlement & Development Corp. v. State, Tex.Civ.App., 282 S.W.2d 78, writ ref., n. r. e.; U. S. Liability Ins. Co. v. Baggett, Tex.Civ.App., 285 S.W.2d 804, writ ref., n. r. e.; Stone v. Williams, Tex.Civ. App., 358 S.W.2d 151; Seymour v. Texas & N. O. Ry. Co., Tex.Civ.App., 209 S.W.2d 814, error ref.; Texas Employers Insurance Ass'n v. Texas Steel Erection Co., Tex.Civ. App., 344 S.W.2d 457, writ ref., n. r. e.

If appellees will file herein a remittitur of $7500.00 on or before October 15, 1962,

the judgment of the Trial Court will be reformed accordingly, and, as reformed, affirmed; otherwise, the judgment of the Trial Court will be reversed and the cause will be remanded for new trial.

BELL, C. J., disqualified and not sitting.

On Filing of Remittitur

WERLEIN, Justice.

On September 27, 1962, we indicated by an opinion in writing that if appellees would file a remittitur of $7500.00 on or before October 15, 1962, the judgment of the trial court would be reformed, and, as reformed, would be affirmed; otherwise the judgment of the trial court would be reversed and the cause remanded. Appellees have filed the suggested remittitur of $7500.00.

Accordingly, as of this date, the judgment of the trial court is reformed by deducting the amount of $7500.00 from the judgment recovered by appellees, and, as so reformed, is affirmed, Chief Justice Bell disqualified and not sitting.

Motion for rehearing may be filed by either party within fifteen days after this date.