I. P. JACOBS et al., Appellants,

v.

The STATE of Texas, Appellee.

No. 16573.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 30, 1964.

Rehearing Denied Dec. 11, 1964.

Lyne, Blanchette, Smith & Shelton, and Robert W. Smith, Dallas, for appellants.

Brown, Herman, Scott & Young, and A. J. Bryan, Fort Worth, for appellee.

RENFRO, Justice.

The State of Texas, on January 10, 1962, by condemnation, took for highway purposes 2,703 square feet of Block B and 84,964 square feet of Block A, Southport Addition, Second Filing, in the City of Fort Worth. The State also acquired certain easement rights on parts of the remaining land. The land was needed as part of right-of-way for a new freeway known locally as the "Poly" freeway.

Owners of the land, defendants below and appellants herein, were I. P. Jacobs and D. G. Fox, Jr.

Appellants contend the court erred in excluding from the jury opinion evidence as to the market value of the land as commercial land.

When appellants purchased the land in 1950 it was zoned as B–2 Family Residential property. In 1954 request was made for changing zoning to E Commercial. The re-

quest was denied. Another request was made in 1957 to change to E Commercial. This request, too, was refused. A third request to change to E Commercial was made in 1959. The request was not acted upon, and no request for rezoning has been made since.

Both Blocks A and B were vacant and had not been used for any purpose by appellants. The two tracts are separated by a light traffic street called Canberra Court. There are no fences, buildings or other structures, except Canberra, between the tracts.

Appellant Fox testified the highest and best use of the land at the time of taking was as commercial land because a rise in elevation at the rear of the land created a physical barrier to residential use and that Mitchell Boulevard, adjoining appellants' land on the east, was a major thoroughfare through that section of town and was commercial in character. His testimony as to value as commercial property was excluded.

Witness Turnbow, before the jury, testified fully as to the market value of the land as residential zoned property. Out of the presence of the jury he testified as to the increasing traffic use of Mitchell Boulevard; improvements made on Berry Street, Vaughn Boulevard and others; that because of the cliff at the rear of the property it was not economically sound to use the property as residential; that based on his past experience on the Board of Adjustment and the City Planning Commission, as well as his experience before the above agencies, he was of the opinion an application for rezoning, if one had been presented before the taking, would have been granted.

On cross-examination he testified there had been no development to the north of the property prior to the taking or at time of trial; no development to the south; prior to taking and at time of trial appellants' land, and property east of Mitchell Boulevard were vacant; the nearest commercial development to appellants' land was on the opposite side of Mitchell Boulevard one quarter mile south and such venture was unsuccessful; that an apartment project which adjoined appellants' land had been unsuccessful; that Mitchell Boulevard had never been a good commercial street.

Witness Meacham, for appellee, testified there was little demand for land along Mitchell Boulevard; that commercial enterprises have never extended to the general area of appellants' land; the highest and best use of appellants' property was B–2 Family Residential; only rezoning on Mitchell Boulevard since 1959 was one piece of property rezoned from B–2 Family Residential to B–Apartment; there was limited demand for property generally in the vicinity, and none for commercial property in 1962.

Both sides rely upon City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808 (1954). Appellants argue that the approval by the Supreme Court in the above case of the following statement from Nichols on Eminent Domain, 2nd Edition, Vol. 1, p. 669, § 219, supports their position: " 'When however a particular use of property is prohibited or restricted by law, but there is a reasonable probability that the prohibition or restriction will be modified or removed in the near future, the effect of such probability upon the value of the property may be taken into consideration.' "

Appellants insist that the evidence is sufficient to show a probability of zoning change so as to make their land available for commercial purposes.

In the Cannizzo case, however, the Supreme Court approved the rule that "If the trial judge is *satisfied from the evidence as a whole* that there is no reasonable probability that existing restrictions may be lifted within a reasonable time, he should exclude evidence of value based on use for any purposes other than those to which it is restricted." (Emphasis added.)

Under the above rule the trial court is vested with considerable discretion in de-

termining "reasonable probability" of rezoning "within a reasonable time". We are not authorized to substitute our rulings for his on the exclusion of the evidence unless it appears that he has abused his discretion. Henslee v. State, 375 S.W.2d 474 (Dallas Civ.App., 1963, ref., n. r. e.).

■ The evidence as a whole amply supports the conclusion of the trial court that there was no reasonable probability that the zoning restriction on appellants' land would be lifted within a reasonable time.

We have given careful study to the 300 page statement of facts and all exhibits. We are unable to say from a study thereof that the trial court abused its discretion in excluding evidence of value of the land as commercial.

Appellants next contend the court erred in treating A and B tracts as one unit in submitting issues to the jury.

The parties stipulated the only issues to be determined were value of the land taken and the damages to the remainder. It was further stipulated appellants would have the right to open and close in the case.

· ■ ▌ The burden was upon appellants to prove the value of the land taken and the damages to the remainder. Ready v. City of Marshall, 234 S.W.2d 104 (Fort Worth Civ.App., 1950, no writ hist.); State v. South Main Baptist Church, 361 S.W.2d 898 (Houston Civ.App., 1962, ref., n. r. e.).

■ If appellants were dissatisfied with the issues as prepared by the court it was their duty to submit in writing, in substantially correct wording, the issues they deemed proper. Rule 279, Texas Rules of Civil Procedure. This they did not do.

In addition, considering all the evidence concerning the land, we believe appellants have shown no harm as a result of the manner of submitting the issues on market value of the land taken and damages to the remainder. State v. Oakley, 163 Tex. 463, 356 S.W.2d 909, 95 A.L.R.2d 1207 (1962); State v. Baker Bros. Nursery, Sup., 366 S.W.2d 212 (1963).

All points of error have been considered and are overruled.

Affirmed.