# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00227-CV

**Monica Ramirez Leyva, Appellant**

**v.**

**Aguado Stone, Inc., Appellee**

### FROM THE 368TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 21-0187-C368, THE HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Monica Ramirez Leyva appeals from the judgment that she take nothing on her claims for wrongful termination on the basis of her gender and pregnancy. Leyva contends that the trial court erred in overruling her objection to Aguado Stone, Inc.'s (Stone) closing argument regarding Leyva's failure to present coworkers as witnesses during the trial. We will affirm the judgment.

## BACKGROUND[1]

Leyva performed administrative and clerical duties for Stone beginning in 2014. Stone was owned by Martin and Raquel Aguado. Leyva asserted in her petition that she left in mid-2017 to stay home with her children but returned in September 2018. In November 2018, she learned that she was pregnant. On February 15, 2019, Raquel Aguado fired her. Leyva

---

[1] Our description of the background of this case is limited because Levya requested the reporter's record only of Stone's closing argument, and Levya's statement of facts in her brief is similarly restricted.

asserted that Raquel told her that her position was too stressful for a pregnant woman. In his closing argument, Stone's counsel argued without objection that its witnesses had testified that Leyva was fired because she was bad at her job. She was late to work, did personal grooming and personal tasks during work hours, and made customers and her coworkers uncomfortable. Stone's counsel argued that Stone fired Leyva because "it was her not being a good employee that was causing them to lose business."

In its charge, the trial court asked the jury, "Was sex a motivating factor in Defendant's decision to discharge Plaintiff?" The jury unanimously answered, "NO."

## DISCUSSION

By a single issue, Leyva contends that the trial court erred by overruling her objection to this passage from Stone's counsel's argument:

> [STONE'S COUNSEL]: We've got one person that's up here telling you a version of events. You heard testimony that there were nine ladies that worked in this office. You had the—three Aguados and Maria Aguado, the sister, came in and testified yesterday; but we also had three non-family members that came in and testified about Ms. Leyva's conduct. How many has she brought? She could have brought other coworkers. Were there other coworkers that would support her story? None came to testify.
>
> MR. MELTON: Your Honor, I think it's improper to argue that she could have brought in other coworkers. I think that's improper argument.
>
> THE COURT: Okay.
>
> MR. MELTON: I ask that it be stricken.
>
> THE COURT: I'll overrule the objection.

Leyva contends that the argument was improper because the other coworkers were equally as available to be called by Stone as by Leyva, citing *Texas Power & Light Co. v. Walker*,

559 S.W.2d 403, 406 (Tex. App.—Texarkana 1977, no writ). Leyva contends that the improper argument was prejudicial and warrants a new trial.

Improper jury argument requires reversal under the following circumstances: (1) there is error in the argument; (2) it was not invited or provoked; (3) the error was preserved by an objection, motion for mistrial, or motion to instruct; (4) the error was not curable by instruction, reprimand by the judge, or proper withdrawal of the statement; and (5) the argument by its nature, degree, and extent constituted reversible harmful error. *Gator Gone Safety Pilots v. Holt*, 622 S.W.3d 524, 548 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (citing *Melendez v. Exxon Corp.*, 998 S.W.2d 266, 280 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing *Standard Fire Ins. v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979))). Incurable jury arguments are rare and occur when comments are so inflammatory or prejudicial that their harmful nature cannot be cured by an instruction to disregard. *See id*. Our review of a claim of improper jury argument must cover the whole case, which begins with the voir dire and ends with closing argument. *National Freight, Inc. v. Snyder*, 191 S.W.3d 416, 420 (Tex. App.—Eastland 2006, no pet.) (citing *Reese*, 584 S.W.2d at 840). The complainant must show that the probability that the improper argument caused harm is greater than the probability the verdict was grounded on the evidence. *Id.* (citing *Reese*. 584 S.W.2d at 840).

We cannot review the "whole case," however, because we do not have the record of the whole case before us. In addition to the clerk's record, we have the reporter's record of only Stone's closing argument. When designating the reporter's record, Leyva stated that she had "requested and received the Trial Transcript of the Defendant's Closing Argument, which is the only part of the transcript needed for the appeal of this cause." Generally, on an appeal with only a partial reporter's record, the court of appeals must presume that the omitted portions of

the record are relevant and support the trial court's judgment.  *Mason v. Our Lady Star of Sea Cath. Church*, 154 S.W.3d 816, 819 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990)).  A party requesting a partial record can "present an appeal on a partial reporter's record and not be subject to the general presumption if she includes in her request for the reporter's record a statement of the points or issues to be presented on appeal."  *Id.*; *see also* Tex. R. App. P. 34.6.  The statement of points or issues limits the issues to be presented on appeal and allows other parties the chance to request any additional portions of the record they believe are relevant to issues presented.  *Garcia v. Sasson*, 516 S.W.3d 585, 590 (Tex. App.—Houston [1st Dist.] 2017, no pet.).  However, we do not find any statement from Leyva of points or issues to be presented on appeal as set out in Texas Rule of Appellate Procedure 34.6(c)(1).

When an appellant entirely fails to present the statement of points or issues, then the presumption that the record is complete for appellate purposes does not apply, and the appellate court applies a presumption that the material missing from the reporter's record is relevant and supports the trial court's judgment.  *Richards v. Schion*, 969 S.W.2d 131, 133 (Tex. App.—Houston [1st Dist.] 1998, no pet.); *see also Greco v. Greco*, No. 04-07-00748-CV, 2008 WL 4056328, at *1 (Tex. App.—San Antonio Aug. 29, 2008, no pet.) (mem. op.).  While Leyva's record designation limited the scope of record to be reviewed, it did not explain the issues she would raise and thereby allow Stone to assess whether it should request additional portions of the record, nor did Leyva file a separate statement of points or issues before filing her brief.  Leyva did not properly invoke the limiting effect of Rule 34.6(c).  Because we do not have a complete reporter's record, we are unable to review the evidence to determine if the verdict was based on the evidence or on the improper argument.  *See Mason*, 154 S.W.3d at 822

(holding that lack of complete record precluded appellate review of alleged incurable jury argument) (citing *Wooten v. S. Pac. Transp. Co.*, 928 S.W.2d 76, 80 (Tex. App.—Houston [14th Dist.] 1995, no pet.) (same)). We must presume that the omitted portions of the record are relevant and would support the judgment. *See Richards*, 969 S.W.2d at 133.

Even if Leyva's record request properly limited the record and the issues reviewable under Rule 34.6 to the section of argument about uncalled witnesses, we cannot conclude that she has demonstrated harmful error from that argument. Stone's counsel's comment about uncalled witnesses did not expressly assert what their testimony would have been, and the remainder of the argument described ample evidence that supported terminating Leyva's employment for reasons other than her gender or pregnancy. More forceful argument regarding the testimony of an uncalled witness has been held not harmful. *See Walker*, 559 S.W.2d at 406. In that case, Walker's attorney argued, over objection, "You can assume that because the Plaintiffs did not call Tom Ramsay as a witness that his testimony would not be favorable to them and that Tom Ramsay would not buckle under and testify the way the Power Company wanted him to." *Id*. at 405. The court of appeals held the argument improper because Ramsay was not under the control of or in a special relationship with the power company. *Id*. at 406. The court noted, however, that the jury had heard ample conflicting evidence on the issue of land value; the court concluded that the argument implying that Ramsay might have valued the land higher than other witnesses had was not so prejudicial that it probably affected the jury's verdict or caused rendition of an improper judgment. *Id*. Here, Stone's attorney noted that several witnesses had testified about Leyva's job performance in contrast to only Leyva's testimony supporting her version of events. The implication that she did not call other coworkers

as witnesses because they would not testify in her favor seems no more harmful than the argument held harmless in *Walker*.

Further, the argument regarding the uncalled coworkers was a minor part of the overall argument regarding permissible reasons for firing Leyva. Stone's counsel argued that Leyva was "a bad employee" and that "[m]ost of the evidence in this case is undisputed or even indisputable." He asserted that Leyva was doing her nails, doing her makeup, and eating on the job. He said that she started missing orders, customers were starting to complain, and other employees were starting to complain that they were having to do her work for her. Stone's attorney referred to an exhibit of time cards showing that Leyva was late to work 99 times in 22 weeks, sometimes by more than an hour. He referred to an exhibit showing that there were no restrictions on her work abilities the week before she was fired, but that Leyva told other employees that picking up a ream of paper would cause her to miscarry; he contended that such statements made her coworkers and Stone's customers uncomfortable. In addition, Stone's counsel reread deposition testimony that he asserted without objection had been read into the record:

> [Question]: "Are you aware there's a whole lot of other ladies that have worked at Aguado Stone and have been just fine working through their pregnancy and not having issues?"
>
> Ms. Leyva answered, "I'm aware."
>
> Next question: "Are you aware that you're the only person that's made a pregnancy-related complaint against the company?"
>
> "I'm aware of this, yes."
>
> Continued: "So you think it might have been something else other than—other than your condition, the reason that you were being fired?"

6

Her answer was, "I believe so."

And I said, "And what were those other reasons?"

And her answer was, "I don't know, but I honestly believe it's something else because I've been pregnant working for them before."

He concluded that section of argument by saying, "She doesn't even believe in this case." Stone's counsel then emphasized that the Aguados fired Leyva when they realized that "it was her not being a good employee that was causing them to lose orders and lose business." He then argued, "There's not one single bit of evidence in this case that they treated her any differently [because she was pregnant]. If anything, they cut her some slack. They cut her a lot of slack, if you ask some people." In context of the full argument—and, by implication, of the entire case reflected by the argument—we conclude that Leyva has not shown she was harmed by Stone's counsel's reference in closing argument to her failure to call other coworkers as witnesses.

## CONCLUSION

We overrule Leyva's single issue on appeal. We affirm the judgment.

_____
Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis

Affirmed

Filed: November 29, 2023

7